UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MERLE NICHOLS, on behalf of himself and
all others similarly situated,

      Plaintiff,

    v.

GEICO GENERAL INSURANCE
COMPANY, a foreign automobile insurance
company,

      Defendant.

Case No. 2:18-cv-01253-RAJ

ORDER

## I. INTRODUCTION

Several motions are before the Court: Defendant's Motion for Summary Judgment (Dkt. # 73), Defendant's Motion to Deny Class Certification (Dkt. # 77), Plaintiff's Motion to Certify Class (Dkt. # 94), Second Joint Statement Regarding Filing Documents Under Seal (Dkt. # 123), and Third Joint Statement Regarding Filing Documents Under Seal (Dkt. # 130). Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, Defendant's motions for summary judgment (Dkt. # 73) and to deny class certification (Dkt. # 77) are **DENIED**, Plaintiff's motion to certify class (Dkt. # 94) is **GRANTED**, and the parties' joint statements are **ADOPTED** (Dkt. ## 123, 130).

ORDER – 1

## II.  BACKGROUND

On January 15, 2015, Plaintiff Merle Nichols was injured in an automobile accident.  Dkt. # 78 ¶ 9; Dkt. # 78-1 at 72.  He then sought personal injury protection ("PIP") coverage from Defendant GEICO General Insurance Company ("GEICO"), which insured the vehicle that injured him.  Dkt. # 78 ¶ 9.  GEICO initially paid some benefits.  *Id.* ¶ 11.

Later, GEICO asked Mr. Nichols to undergo an independent medical examination ("IME") conducted by a GEICO-hired chiropractor.  *Id.* ¶¶ 11, 14; Dkt. # 125-2 at 56-68.  The goal of the IME was "to determine the medical necessity and relatedness of the treatment to the accident."  Dkt. # 78-1 at 53.  Mr. Nichols attended the IME, and the chiropractor issued his report.  Dkt. # 125-2 at 56-68.  Soon after, on August 21, 2015, GEICO sent Mr. Nichols a letter terminating his coverage:

> According to Dr. Jerry Torrence, "There were no objective findings today to support this patient's subjective findings," and "*Merle Nichols has reached maximum medical improvement* effective on this date." Therefore, we are suspending all medical payments for treatment your client receives after 8/11/2015. As the treatment up to that date is reasonable and related we will be issuing payments for billing received for dates of service on or before 8/11/2015.

Dkt. # 95-11 at 2 (emphasis added).  In response, Mr. Nichols's counsel informed GEICO that maximum medical improvement ("MMI") could not "be the basis of discontinuation of PIP benefits" under WAC 284-30-395.  Dkt. # 95-12.

On August 24, 2018, Mr. Nichols sued GEICO in King County Superior Court.  Dkt. # 1-2.  The same day, GEICO removed the action to this Court.  Dkt. # 1.

Based on his Second Amended Complaint, Mr. Nichols alleges that GEICO violated WAC 284-30-395.  Dkt. # 16 ¶¶ 1.1-1.2.  According to Mr. Nichols, under that regulation, PIP benefits may be terminated only "if treatment is not (1) reasonable, (2) necessary, (3) related to the accident, or (4) incurred within three years of the accident."  *Id.*  GEICO violated the regulation, he says, when it terminated his PIP benefits on the

ORDER – 2

basis that he had achieved "maximum medical improvement," a basis not permitted by the regulation.  *Id.* ¶¶ 1.1-1.2, 5.1-5.16.  Because Mr. Nichols alleges that GEICO had a "systematic practice" of doing this to other insureds beyond Mr. Nichols, he is hoping to bring this suit on behalf of a class.  *Id.* ¶¶ 3.1-3.10.  He asserts claims for declaratory relief, violation of the Insurance Fairness Conduct Act ("IFCA"), violation of Washington's Consumer Protection Act ("CPA"), common law bad faith, and breach of the implied covenant of good faith and fair dealing.  *Id.* ¶¶ 6.1-10.4.

Since bringing this action, Mr. Nichols has moved for class certification.  Dkt. # 94.  He has defined the class as:

> All insured, as defined within GEICO's Automobile Policy, and all third-party beneficiaries of such coverage, under any GEICO insurance policy effective in the state of Washington between July 24, 2012 and the present, for whom GEICO limited or terminated benefits, or denied coverage based, even in part, upon its determination that its insured or beneficiary had reached "maximum medical improvement" or that such benefits were not "essential in achieving maximum medical improvement for bodily injury."

*Id.* at 9.  GEICO moved to deny class certification.[1]  Dkt. # 77.  GEICO has also moved for summary judgment, arguing that collateral estoppel bars Mr. Nichols's claims.  Dkt. # 73.  All motions are now ripe for review.

### III.  LEGAL STANDARD

#### A.    Summary Judgment

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively

---

[1] "Rule 23 does not preclude a defendant from bringing a 'preemptive' motion to deny certification."  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009).

ORDER – 3

demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

**B.    Class Certification**

A court's decision to certify a class is discretionary. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009). Federal Rule of Civil Procedure 23 guides the court's exercise of discretion. A plaintiff "bears the burden of demonstrating that he has met each of the four requirements of Rule 23(a) and at least one of the [three alternative] requirements of Rule 23(b)." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). Rule 23(a) requires a plaintiff to demonstrate that (1) the proposed class is sufficiently numerous ("numerosity"); (2) it presents common issues of fact or law ("commonality"); (3) it will be led by one or more class representatives with claims typical of the class ("typicality"); and (4) the class representative will adequately represent the interests of the class ("adequacy"). *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982); Fed. R. Civ. P. 23(a). If a plaintiff satisfies the Rule 23(a) requirements, he must also show that the proposed class action meets one of the three requirements of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Here, Mr. Nichols seeks certification under Rule 23(b)(3). Dkt. # 94 at 3. A class may be certified under this subdivision if (1) common questions of law and fact

ORDER – 4

predominate over questions affecting individual members and (2) if a class action is superior to other means to adjudicate the controversy. Fed. R. Civ. P. 23(b)(3). The "predominance" and "superiority" prongs of Rule 23 work together to ensure that certifying a class "would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (internal citation and quotation omitted). A "central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole*, 571 F.3d at 944 (quoting *Zinser*, 253 F.3d at 1189). Thus, the court must determine whether resolution of common questions would resolve a "significant aspect" of the class members' claims such that there is "clear justification" for class treatment. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citations omitted).

In considering Rule 23's requirements, the court must engage in a "rigorous analysis," but a "rigorous analysis does not always result in a lengthy explanation or in depth review of the record." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005) (citing *Falcon*, 457 U.S. at 161). The court is neither permitted nor required to conduct a "preliminary inquiry into the merits" of the plaintiff's claims. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)); *see also* Fed. R. Civ. P. 23 advisory committee's note (2003) ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision."). *But see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (suggesting that Rule 23 analysis may be inextricable from some judgments on the merits in a particular case). The court may assume the truth of a plaintiff's substantive allegations but may require more than bare allegations to determine whether a plaintiff has satisfied the requirements of Rule 23. *See, e.g.*, *Blackie*, 524 F.2d at 901, n.17; *Clark v. Watchie*, 513 F.2d 994, 1000 (9th Cir. 1975) ("If the trial judge has made findings as to

ORDER – 5

the provisions of the Rule and their application to the case, his determination of class status should be considered within his discretion.").

## IV.  DISCUSSION

### A.  Joint Statements Regarding Filing Documents Under Seal (Dkt. ## 123, 130)

Explained in a previous order, this Court requires the parties to submit their sealing requests in the form of a joint statement.  Dkt. # 118.  The parties already submitted one such joint statement, the "First Joint Statement," for sealed documents related to their class certification motions.  Dkt. # 116.  The Court adopted the joint statement.  Dkt. # 118.  It explained that the parties met the applicable sealing standard for three categories of documents: "documents containing GEICO's confidential trade secrets or proprietary competitive information; confidential medical information of GEICO insureds or claimants who are not parties to this lawsuit; and briefs or declarations containing confidential information."  *Id.* at 2.  At the time, class certification briefing was not complete.

Since then, the parties have fully briefed their class certification motions.  Per the Court's instruction, the parties have submitted their new sealing requests through two more joint statements, the "Second Joint Statement" and "Third Joint Statement" respectively.  Dkt. ## 123, 130.  The Second Joint Statement relates to GEICO's opposition to Mr. Nichols's class certification motion.  Dkt. # 123.  The Third Joint Statement relates to Mr. Nichols's reply in support of the class certification motion.  Dkt. # 130.  Across the statements, the parties have primarily argued over the confidentiality of "[d]ocuments containing []confidential medical information of GEICO insureds or claimants who are not parties to this lawsuit."  Dkt. # 123 at 4; Dkt. # 130 at 2.  GEICO says that this information "should be sealed to protect putative class members' privacy interests and to prevent disclosure of their medical information."  Dkt. # 123 at 20.  Mr. Nichols does not disagree, in principle, but maintains that the "current redactions render

ORDER – 6

the[] documents sufficiently anonymous as to allow them to be filed unsealed." *Id.* at 7. Like last time, the Court agrees with GEICO. Dkt. # 118 at 2 n.1. Information of GEICO insureds or claimants who are not parties to this lawsuit may remain sealed.

The Court has reviewed the Second and Third Joint Statements and sealed documents attached thereto. Dkt. ## 123-24, 130-32. The Court **ORDERS** that all newly sealed documents have met the applicable sealing standards and may remain under seal. Dkt. ## 124, 131, 132.

## B. Motion for Summary Judgment (Dkt. # 73)

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give a state court judgment "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). In Washington, issue preclusion, or collateral estoppel, bars the re-litigation of issues that were decided in a previous proceeding involving the same parties. *Sprague v. Spokane Valley Fire Dep't*, 409 P.3d 160, 183 (Wash. 2018). To prevail on an argument of issue preclusion or collateral estoppel in Washington, a defendant must show (1) the actions address the same issues; (2) the prior action ended in a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party to, or in privity with, a party to the prior action; and (4) application of the doctrine is not unjust. *Afoa v. Port of Seattle*, 421 P.3d 903, 914 (Wash. 2018).

GEICO argues that collateral estoppel forecloses any relief here. Dkt. # 73. Before bringing this action, Mr. Nichols sued Thomas Sullivan, the GEICO-insured driver of the vehicle that injured him, in King County Superior Court. Dkt. # 74-1 at 7-11; Dkt. # 78 ¶ 9. In that case, *Nichols v. Sullivan*, Mr. Nichols alleged that he was riding his bicycle when Mr. Sullivan collided into him with his car. Dkt. # 74-1 at 7-11. Mr. Nichols sued Mr. Sullivan for negligence. *Id.* The case went to trial, and, more than four years after the accident, a jury determined that although Mr. Sullivan was indeed negligent, his negligence did not proximately cause Mr. Nichols's injury. *Id.* at 2-4.

ORDER – 7

According to GEICO, the verdict in *Sullivan* entitles it to summary judgment here.  Dkt. # 73.

Because the issue resolved in *Sullivan* is not identical to the issue here, GEICO does not make it past step one of the collateral estoppel analysis.  At issue in *Sullivan* was whether Mr. Sullivan was liable for negligence after he struck Mr. Nichols.  At issue here is whether GEICO, in handling Mr. Nichols's claim, engaged in bad faith or unfair and deceptive practices under Washington law.  The two cases involve entirely different injuries.  In *Sullivan*, Mr. Nichols sought damages to compensate him for a car collision. Dkt. # 74-1 at 7-11.  Here, Mr. Nichols seeks damages to compensate him for GEICO's alleged improper claim handling.  Dkt. # 16 ¶¶ 6.1-10.4.

Further, the two issues do not share "controlling facts," "applicable legal rules," or "the same bundle of legal principles."  *Lemond v. State, Dep't of Licensing*, 180 P.3d 829, 833 (Wash. Ct. App. 2008).  Core to *Sullivan* were negligence principles, such as duty, breach, causation, and damages.  Dkt. # 74-2 at 53-64, 74.  This case, on the other hand, concerns the application of various Washington statutes and the interpretation of WAC 284-30-355(1) and recent Washington Supreme Court precedent in *Durant v. State Farm*.  Dkt. # 16 ¶¶ 6.1-10.4.  Controlling in *Sullivan* were circumstances surrounding the collision, such as Mr. Sullivan's failure to yield.  Dkt. # 74-1 at 7-11.  Controlling here are circumstances surrounding GEICO's claim handling, such as its requirement for a medical examination and later denial of coverage.

According to GEICO, the issues in this case overlap with *Sullivan* significantly. Its argument goes as follows: In *Sullivan*, the jury determined that Mr. Nichols was not entitled to any damages because even though Mr. Sullivan was negligent, his negligence was not the proximate cause of Mr. Nichols's injury.  Dkt. # 73 at 3.  Given the verdict, "GEICO cannot be liable for not paying benefits it did not have an obligation to pay in the first place."  *Id.* at 4.  Thus, GEICO suggests, the verdict retroactively negated any contractual obligations owed to Mr. Nichols.  *See* Dkt. # 103 at 3 ("It is axiomatic that to

make a claim for wrongful termination of insurance benefits, Plaintiff necessarily must have been entitled to those insurance benefits to begin with. . . . [H]e was only eligible for benefits under the GEICO Policy if he suffered bodily injuries in the Accident with the Sullivans, and the *Sullivan* Case jury determined that was not the case. An insurer cannot wrongfully terminate benefits that were never owed, and the jury has determined Plaintiff was never entitled to any benefits under the Policy."). And because GEICO owed no contractual obligations in the first place, Mr. Nichols cannot recover on any of his claims, all of which require coverage under a policy. Dkt. # 73 at 11-20.

Why the *Sullivan* verdict would, as GEICO suggests, retroactively negate GEICO's policy obligations is a mystery. The verdict in *Sullivan* simply determined that Mr. Sullivan's negligence was not the proximate or legal cause of Mr. Nichols's injury. Dkt. # 74-1 at 2-5. Yet GEICO's policy did not make proximate cause a condition precedent to coverage. Put differently, GEICO's policy did not require that, for coverage obligations to issue at all, an insured's negligence must have first been found to be the proximate or legal cause of an accident. *Id.* at 39. Under the policy, an "insured" is simply "a pedestrian accidentally struck by the insured automobile." *Id.* Surely, a condition precedent requiring a finding of proximate cause before coverage is issued would make little sense. That interpretation would presumably require an injured pedestrian to fully litigate his claims to a factfinder before receiving any coverage whatsoever.

Here, it is undisputed that Mr. Nichols was a pedestrian accidentally struck by a GEICO-insured automobile and that GEICO paid for medical benefits under Mr. Sullivan's PIP coverage accordingly. Dkt. # 78 ¶¶ 9, 11; Dkt. # 95-10. Once GEICO undertook that coverage, certain statutory and common law obligations began to accrue. A jury verdict (entered more than four years after the accident) finding that Mr. Sullivan was not in fact the proximate or legal cause of Mr. Nichols's injury did not retroactively nullify those obligations.

ORDER – 9

Thus, GEICO vastly overstates the import of *Sullivan*. Because the issues in the two cases are not identical, collateral estoppel does not apply, and GEICO's motion for summary judgment is **DENIED**.

### C. Motion for Class Certification & Motion to Deny Class Certification (Dkt. ## 77, 94)

The Court begins with Rule 23(a): numerosity, commonality, typicality, and adequacy. It then turns to Rule 23(b): predominance and superiority.[2]

#### i. Numerosity

Numerosity is satisfied where joinder would be impracticable. *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d 1324, 1340 (W.D. Wash. 1998) (citing *Harris v. Palm Spring Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964)). There is no set numerical cutoff used to determine whether a class is sufficiently numerous; courts must examine the specific facts of each case to evaluate whether the requirement has been satisfied. *See Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 329-30 (1980). "As a general rule, [however,] classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012) (quoting *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988)).

Mr. Nichols has reviewed a "statistically valid sample" of all "PIP claims that GEICO had in Washington during the alleged putative class period." Dkt. # 94 at 4 n.2. Using that sample, it has estimated how many members are likely to be in the putative class. *Id.* at 16. The Court has reviewed that estimate and finds that the numerosity requirement is met. GEICO does not argue otherwise. *See* Dkt. # 120.

---

[2] GEICO moves to deny class certification under both Rule 23(b)(2) and Rule 23(b)(3), Dkt. # 77 at 23-24, whereas Mr. Nichols seeks certification only under Rule 23(b)(3), Dkt. # 88 at 17 n.10. Because Mr. Nichols seeks certification solely under Rule 23(b)(3), the Court need not address GEICO's Rule 23(b)(2) arguments at this time.

ORDER – 10

### ii. Commonality

To meet the commonality requirement, a plaintiff must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A plaintiff and class must share a "common contention," one "capable of classwide resolution" because the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). What matters "is not the raising of common 'questions'—even in droves— but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original) (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-32 (2009)). Commonality only requires a single significant question of law or fact. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012).

The commonality element is met. Mr. Nichols alleges that GEICO terminated his PIP benefits because he reached MMI. Dkt. # 16 ¶ 5.13. He alleges that his injury stemmed from GEICO's "systematic practice" of denying PIP coverage based on an insured's achievement of MMI. *Id.* ¶¶ 1.1, 1.2. Given that practice, he hopes to bring this action on behalf of other insureds who have likewise had their benefits terminated. *Id.* GEICO's use of MMI to adjust coverage, he believes, violates WAC 284-30-395(1) and thereby entitles him (and the class) to relief under several Washington laws. *See id.* ¶¶ 7.1-10.4.

To that end, Mr. Nichols claims to share five common questions with the class. Dkt. # 94 at 15. Principal among them is whether GEICO has "a routine practice of limiting PIP benefits based upon . . . whether [a] claimant ha[s] reached MMI[.]" *Id.* This factual question is followed by several legal questions, specifically whether GEICO's conduct would entitle Mr. Nichols to recovery under his various claims. *Id.*

Rule 23(a)(2) asks this Court to determine whether common questions *exist*. Even a single question will do. *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th

Cir. 2016).  The Court finds that at least one common question is indeed present here.  It is one that Mr. Nichols shares with the class and one that will resolve a central issue to the claims in one stroke.  That question is whether GEICO has a "routine practice" of limiting PIP benefits based on MMI, running afoul of both WAC 284-30-395(1) and *Durant v. State Farm Mutual Automobile Insurance Co.*, 419 P.3d 400 (Wash. 2018).

Mr. Nichols offers evidence that it does have such a practice.  Dkt. # 94 at 3-7.  According to Mr. Nichols, GEICO has a standard PIP policy for Washington state that expressly excludes "reasonable and necessary" medical expenses when such care is no longer "essential in achieving maximum medical improvement." *Id.* at 4.  Many claimants were required to attend IMEs conducted by GEICO engaged doctors. *Id.*  Those doctors were often given "standardized pre-written questions" to opine on MMI.  *Id.* at 4-5.  And, finally, GEICO termination letters followed a "common linguistic" or "formulaic" structure asserting MMI. *Id.* at 5-7.

GEICO, on the other hand, offers evidence that it has no such routine practice of employing MMI.  Dkt. # 77 at 8-10.  It says that it never used a "task code or other programmatic feature" to "designat[e] MMI as a basis for PIP claim terminations." *Id.* at 8.  And its denial letters varied from claimant to claimant. *Id.* at 8-9.  Some letters, for example, identified more than one reason for a denial of coverage other than MMI, such as a preexisting condition or absence of evidence. *Id.*

At class certification, the Court need not *resolve* this common question—it must simply determine that it *exists*.  *Ruiz*, 835 F.3d at 1140 ("When, as here, the concern about the proposed class is . . . an alleged failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification." (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 457 (2016)).  After conducting a "rigorous analysis," as it must, this Court determines that the commonality element has been satisfied because common questions indeed exist. *Cf. Morrison v. Esurance Ins. Co.*, No. 2:18-cv-01316-TSZ, 2020 WL

583824, at \*3 (W.D. Wash. Feb. 6, 2020); *Durant v. State Farm Mut. Auto. Ins. Co.*, No. 2:15-cv-01710-RAJ, 2017 WL 950588, at \*4 (W.D. Wash. Mar. 9, 2017).

GEICO's remaining arguments to the contrary are based on its reading of *Durant* and *Morrison*. Dkt. # 77 at 13-15; Dkt. # 120 at 19-21. The Court addresses those arguments in Section IV.C.v *infra*.

### iii.    Typicality

Under Rule 23(a)(3), the claims or defenses of the class representatives must be typical of the claims or defenses of the class. *See* Fed. R. Civ. P. 23(a)(3). This requirement is generally satisfied so long as the named plaintiffs' claims are "reasonably coextensive" with those of absent class members. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). In other words, the question for "typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct." *See In re Wash. Mut. Mortgage–Backed Secs. Litig.*, 276 F.R.D. 658, 665 (W.D. Wash. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Mr. Nichols satisfies the typicality requirement because the course of conduct leading to his alleged injury—that GEICO denied coverage based on the MMI standard— is the same for all potential class members. That each claim will necessarily include a unique set of facts based upon individual bodily injuries does not negate the common nature of those claims. *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) ("Thus, '[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.'" (alteration in original) (quoting *Hanon*, 976 F.2d at 508)).

GEICO argues that Mr. Nichols fails this prong for three reasons. First, it says that because Mr. Nichols is collaterally estopped from seeking PIP benefits, "he is not part of the class he seeks to represent." Dkt. # 120 at 22. The Court has already rejected

ORDER – 13

this argument.

Second, GEICO says that because Mr. Nichols failed to bring a breach of contract claim, "all other members would forfeit their breach of contract claims, creating a conflict of interest with putative class members who could otherwise advance those claims." *Id.* In response, Mr. Nichols argues that he has, in fact, raised a valid breach of contract claim. Dkt. # 88 at 16. The Second Amended Complaint itself does not assert a breach of contract claim. Dkt. # 16. But, in removing this case from state court, Mr. Nichols says, GEICO acknowledged that Mr. Nichols was seeking "damages resulting from GEICO's alleged breach of contract" in its notice of removal. Dkt. # 88 at 16; Dkt. # 1 ¶ 14. Mr. Nichols argues that GEICO thus had actual notice of a breach of contract claim though the claim is not specifically raised in the Second Amended Complaint. Dkt. # 88 at 16. Alternatively, should the Court determine that no breach of contract claim has been raised, Mr. Nichols represents that he would seek leave to amend. Dkt. # 94 at 19.

Mr. Nichols's operative complaint does not raise a claim for breach of contract. Dkt. # 16. GEICO's representations in its notice of removal are not part of the pleadings and are therefore irrelevant. The Court expresses no opinion on whether leave to amend would be appropriate.

In any event, the "specter of claim splitting" does not defeat class certification. *See In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-cv-20000-RDP, 2020 WL 8256366, at *20 (N.D. Ala. Nov. 30, 2020). "[C]ourts have noted that any risk of preclusion can be mitigated through the opt-out provisions under Rule 23(b)(3)." *Andren v. Alere, Inc.*, No. 3:16-cv-01255-GPC-AGS, 2017 WL 6509550, at *8 (S.D. Cal. Dec. 20, 2017) (collecting cases); *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 414 (5th Cir. 2017) ("We note that the risk to unnamed class members is smaller than usual here because of the opportunity for opt outs. Plaintiffs sought certification under Rule 23(b)(3), which allows opting out. Thus, if unnamed class members thought that the risk of preclusion were cogent and wished to protect their claim, they could do so." (citation

ORDER – 14

omitted)). Indeed, "[s]ome courts have held that the doctrine against claim splitting does not apply to class actions" at all. *In re Blue Cross*, 2020 WL 8256366, at *20 (collecting cases). Thus, the Court agrees with Mr. Nichols. Dkt. # 94 at 19. The danger that class members would be precluded from bringing a contract claim later on is mitigated given their ability to opt out.

Finally, GEICO argues that Mr. Nichols is not credible because he "cannot give a consistent description of the accident." Dkt. # 120 at 23. For example, he previously claimed that he was struck on his left side and landed on his right side but now claims that Mr. Sullivan's vehicle rolled across his legs. *Id.* In response, Mr. Nichols argues that these "vague attacks [on] Mr. Nichols'[s] memory and mental health" are insufficient to defeat class certification. Dkt. # 128 at 12.

Again, the Court agrees with Mr. Nichols. To preclude class certification, credibility issues of a class representative "must relate to issues directly relevant to the litigation." *Jammeh v. HNN Assocs., LLC*, No. 2:19-cv-00620-JLR, 2020 WL 5407864, at *14 n.17 (W.D. Wash. Sept. 9, 2020) (quoting *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 525 (C.D. Cal. 2012)) (explaining that "whether the court addresses th[e credibility] issue under the prerequisite of adequacy or typicality does not affect the analysis"). Or there must be "confirmed examples of dishonesty, such as a criminal conviction for fraud." *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 300 F.R.D. 347, 370 (C.D. Cal. 2013) (internal quotation marks omitted) (quoting *Harris v. Vector Mktg. Corp.*, 754 F. Supp. 2d 996, 1015 (N.D. Cal. 2010)). Credibility attacks, at a minimum, must be "so sharp as to jeopardize the interests of absent class members." *Jammeh*, 2020 WL 5407864, at *14 (quoting *Harris*, 754 F. Supp. 2d at 1015).

GEICO's attack on Mr. Nichols's "memory lapses" do not meet this standard. Mr. Nichols's account of the accident may indeed be relevant to this litigation. But the crux of this case is GEICO's investigation of his PIP claim and its denial of coverage, not on

ORDER – 15

the accident itself. Given that, his allegedly inconsistent recollection is not so "sharp" that it jeopardizes other class members. Further, GEICO cites no confirmed examples of Mr. Nichols's dishonesty.

In sum, the Court rejects all three arguments raised by GEICO and finds that the typicality requirement is met.

### iv. Adequacy

The adequacy requirement under Rule 23(a) has two components: (1) whether any conflicts of interests exist between plaintiffs and their counsel and other class members, and (2) whether plaintiffs and their counsel will vigorously prosecute the action on behalf of the class members. Fed. R. Civ. P. 23(a)(4); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (citations omitted).

Mr. Nichols and his counsel meet the adequacy requirement. Besides the typicality arguments above, GEICO identifies no conflict of interest between Mr. Nichols, his counsel, and the putative class. And GEICO does not argue that Mr. Nichols's counsel is inadequate. *Cf.* Dkt. ## 96-98. The Court finds that there are no conflicts of interest and that Mr. Nichols and his able counsel will vigorously prosecute this action on behalf of the class.

### v. Predominance

With the four prerequisites of Rule 23(a) satisfied, the Court turns to the remaining requirements of "predominance" and "superiority" under Rule 23(b)(3).

"[The] predominance inquiry asks the court to make a global determination of whether common questions prevail over individualized ones." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). Individual questions are those where "members of a proposed class will need to present evidence that varies from member to member." *Id.* (internal quotation marks omitted) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). Common questions, on the other hand, are those where "the same evidence will suffice for each member to make a prima facie

showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (alteration in original) (internal quotation marks omitted). A court must first characterize the issues in a case as common or individual and then weigh which predominate. *Jabbari v. Farmer*, 965 F.3d 1001, 1005 (9th Cir. 2020). Weighing the two "is not an exact science." *Id.* Rather, a court must determine which type of question will likely "drive the resolution of the litigation." *Id.* (quoting *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016)).

The Court has already determined that common questions exist and that Rule 23(a)(2) is met. But the predominance inquiry under Rule 23(b) is "far more demanding." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). To characterize the issues as common or individual, the Court briefly peers into the merits of Mr. Nichols's claims.

In *Durant v. State Farm Mutual Automobile Insurance Co.*, 419 P.3d 400, 402 (Wash. 2018), the Washington Supreme Court addressed a single issue: "whether an insurer's use of a 'maximum medical improvement' (MMI) provision violates WAC 284-30-395(1)." The court answered "yes": "An insurer violates WAC 284-30-395(1)(a) or (b) if that insurer denies, limits, or terminates an insured's medical or hospital benefits claim based on a finding of 'MMI.'" *Id.* at 409.

The court explained that WAC 284-30-395(1) lists the "only permissible bases" for denying PIP coverage and that MMI is not one such basis:

> WAC 284-30-395(1) provides that the only permissible bases for denying PIP medical expense payments are if treatment is not reasonable, not necessary, not related to the accident, or not incurred within three years of the accident. This regulation and the noted statutes reflect Washington's strong public policy in favor of the full compensation of medical benefits for victims of road accidents.
>
> By contrast, State Farm's policy language limits payment of PIP medical benefits to services "essential in achieving maximum medical improvement." This limitation denies Durant his PIP medical benefits necessary to return him to his preinjury state.

*Id.* at 407 (citation omitted). Put unequivocally, the "final sentence of [WAC 284-30-395(1)] is unambiguous: an insurer may deny PIP benefits 'only' for the reasons listed; *no other reasons are permitted*." *Id.* at 404 (emphasis added).

Given the Washington Supreme Court's holding in *Durant*, Mr. Nichols claims that GEICO violated WAC 284-30-395(1). Dkt. # 16 ¶ 7.3. According to him, GEICO was only permitted to terminate insurance if treatment was no longer reasonable, necessary, related to the accident, or incurred within three years of the accident. *Id.* ¶ 1.2. Yet GEICO terminated his coverage, Mr. Nichols claims, when he achieved "maximum medical improvement," *id.*, an impermissible basis under *Durant*. He alleges that other class members similarly suffered under GEICO's "systematic practice" of denying coverage based on MMI. *Id.* ¶ 1.1.

### (1) Common Issues

As discussed above, the common question here is whether GEICO, in fact, had a systematic practice of denying coverage based on MMI, thereby violating WAC 284-30-395(1). Mr. Nichols has shown that the resolution of that issue is "susceptible to generalized, class-wide proof." *Ruiz*, 835 F.3d at 1134. At this stage, Mr. Nichols has supported his class allegations with the following evidence: GEICO had a standard PIP policy for Washington insureds, in which it would cover medical expenses that were "reasonable," "necessary," and *essential in achieving maximum medical improvement for the bodily injury sustained in the accident.*" Dkt. # 94 at 4. Many PIP claimants were required to attend insurance medical examinations conducted by "GEICO-engaged" doctors. *Id.* Those doctors were asked, through standardized questions, to opine on a claimant's achievement of MMI. In most of the pre-*Durant* IME reports GEICO specifically asked whether a claimant had achieved MMI. *Id.* at 5. In terminating PIP benefits for achievement of MMI, GEICO's denial letters used a "common linguistic" or "formulaic" structure. *Id.* at 5-6.

This common question weighs heavily in the predominance analysis. Its

ORDER – 18

resolution is central to each of Mr. Nichols's causes of action: IFCA violation, CPA violation, bad faith, and breach of the implied covenant of good faith and fair dealing. *Id.* ¶¶ 7.1-10.4; *see also Durant v. State Farm Mut. Auto. Ins. Co.*, No. 2:15-cv-01710-RAJ, 2017 WL 950588, at *5 (W.D. Wash. Mar. 9, 2017) (collecting cases) (finding predominance met because "[c]entral to each cause of action [was] whether State Farm's use of the MMI standard to deny claims [was] unreasonable or an 'unfair or deceptive act or practice'"); *Morrison v. Esurance Ins. Co.*, No. 2:18-cv-01316-TSZ, 2020 WL 583824, at *5 (W.D. Wash. Feb. 6, 2020) (finding predominance met because "[c]entral to each of Plaintiff's six causes of action is whether Esurance used the MMI standard to deny, limit, or terminate claims in violation of WAC 284-30-395(1)" and because "[t]hat common issue will resolve most of the elements of the six alleged causes of action").

### (2) Individual Issues

GEICO argues that this case is replete with individual issues. Dkt. # 77. Curiously, rather than argue that individual issues predominate over common ones (predominance), GEICO primarily argues that individual issues make a class action unmanageable and inferior to individual actions (superiority). *Id.* The Court addresses this threshold issue before identifying the individual issues.

### (i)    Predominance Rather than Superiority

Rather than focusing on the predominance prong of Rule 23(b), GEICO couches its argument in Rule 23(b)'s superiority prong. *Id.* Its argument is that a class action is not superior to individual lawsuits because the individual issues here would require "hundreds of mini trials" and because individual class members "have a substantial interest in litigating individual claims" given that each insured stands to gain a substantial amount. *Id.* at 2, 10-15. GEICO presumably frames its argument this way to "mirror" *Morrison*, a case with similar facts and where class certification was denied. *Id.* at 3-10 ("Class treatment here is not a superior method of fairly and efficiently adjudicating these claims for the same three reasons it was not in *Morrison*." (emphasis omitted)).

Though the *Morrison* court found predominance (and indeed every other class action requirement under Rule 23), it ultimately denied class certification for lack of superiority. 2020 WL 583824, at *6. In *Morrison*, a class action was not superior for two reasons. First, the "large amount of potential relief and the availability of treble damages and attorneys' fees w[ould] provide substantial incentive for class members and their attorneys to prosecute claims individually." *Id.* Second, "[d]etermining who is in the class would likely require miniature trials," and the resources expended to that end "would likely surpass the resources saved by litigating common issues of law and fact as a class action." *Id.* at *7. Unsurprisingly, GEICO makes the same arguments here.

Unlike *Morrison*, the Court determines that the weighing of individual issues is best left under Rule 23(b)'s predominance prong, not the superiority prong, and addresses GEICO's argument about individual issues here.

> Although litigation of the manageability issue accounts for much superiority law, courts deny class certification on manageability grounds relatively *infrequently* and primarily in certain carefully circumscribed situations. This is so . . . because the cases most likely to be unmanageable are those involving myriad individual issues, the manageability concern often simply *echoes the predominance analysis*. Therefore, courts generally hold that if the predominance requirement is met, then the manageability requirement is met as well.

§ 4:72. Four factor test—Manageability—Overview, 2 Newberg on Class Actions § 4:72 (5th ed.) (emphasis added). Thus, before reaching superiority and manageability, the Court must first determine what the individual issues are and whether they predominate.

### (ii) Individual Issues Post-*Durant*

GEICO's argument is founded on a faulty premise. GEICO argues "it is not unlawful for an insurer to *mention* MMI in adjusting a PIP claim or to use MMI as part of the rationale for terminating, limiting, or denying PIP benefits *if the decision is [otherwise] grounded in one of the four factors outlined in Washington's PIP laws*." Dkt. # 77 at 3 (emphasis added). The argument misreads *Durant* and overstretches

ORDER – 20

*Morrison*.

In unequivocal terms, the Washington Supreme Court held that an insurer may deny PIP benefits only "only for the reasons listed" in WAC 284-30-395(1)—"no other reasons are permitted." *Durant v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 400, 404 (2018) (internal quotation marks omitted). Put another way, if an insurer denies PIP benefits for any reason other than "if treatment is not reasonable, not necessary, not related to the accident, or not incurred within three years of the accident," then it will violate the regulation. *Id.* at 407. And, specifically, an insurer violates the regulation if it "denies, limits, or terminates an insured's medical or hospital benefits claim *based on a finding* of 'MMI.'" *Id.* at 409 (emphasis added).

Under GEICO's interpretation of *Durant*, an insured violates WAC 284-30-395(1) only if the sole reason for, or "primary criterion" of, the insured's denial was a finding of MMI. Dkt. # 77 at 3-4, 9. Put simply, GEICO argues that *Durant* prohibits MMI from being *the* reason an insurer terminates PIP coverage—not from being *a* reason an insurer terminates PIP coverage.

To craft this interpretation, GEICO relies on a few footnotes in *Morrison*, which applied *Durant* and denied class certification. There, the parties disagreed about *Durant*'s reach. *Morrison*, 2020 WL 583824, at *1 n.3. Did the *Durant* court prohibit *any* use of MMI to terminate coverage, even if it was just "one of [] many bases" used? *Id.* The *Morrison* court suggested that it did not. *Id.* According to the *Morrison* court, *Durant*'s holding is simply that insurers violate WAC 284-30-395(1) "when they terminate benefits based on a finding of MMI." *Id.* And *Durant* "did not expressly hold that the mere mention of MMI would constitute a violation." *Id.* at *2 n.4. Ultimately, however, the *Morrison* court did not resolve the issue because it "reache[d] the same result regardless of the reach of *Durant*." *Id.* at *1 n.3. Taking these footnotes, GEICO now says that "Washington law is clear." Dkt. # 77 at 3. The "consideration or mere mention of MMI in adjusting PIP claims" does not violate WAC 284-30-395(1). *Id.*

ORDER – 21

From there, GEICO's argument goes:

> [T]o determine whether each putative class member has a viable claim under Washington law, Plaintiff cannot meet his burden of proof by merely showing MMI was "mentioned" in evaluating a PIP claim. Instead, a jury will have to determine, in each instance where MMI may have been mentioned, whether it was one of multiple factors GEICO considered in determining whether to continue benefits, or if it was the sole basis of a determination to deny or limit benefits. Only the latter is a potential violation of Washington law.

*Id.* at 4. As a result, GEICO says, "hundreds of mini-trials" would abound if a class were certified. *Id.* at 6.

GEICO's argument is unpersuasive for a host of reasons. First, it exaggerates the holding of *Morrison*. Nearly all of GEICO's argument is based on *Morrison*'s footnotes. In those footnotes, the *Morrison* court expressly said it was not deciding the issue of *Durant*'s reach. *Morrison*, 2020 WL 583824, at *1 n.3. Second, GEICO's argument ignores *Durant*'s explicit holding: "an insurer may deny PIP benefits 'only' for the reasons listed [in WAC 284-30-395(1)]; *no other reasons are permitted*." *Durant*, 419 P.3d at 404. Thus, an insurer violates the regulation if it denies PIP benefits for any reason other than those listed in the regulation. For example, say an insurer denies PIP coverage for three reasons: treatment is no longer reasonable, treatment is no longer necessary, and a claimant has reached maximum medical improvement. The first two reasons are justified under WAC 284-30-395(1). The third is explicitly prohibited under *Durant*. Based on the Court's reading of *Durant*, it matters not that legitimate reasons are commingled with illegitimate ones: *Durant* prohibits the use of MMI as a reason to deny coverage at all because MMI is not a reason listed in WAC 284-30-395(1).

Interpreting *Durant* this way does not mean that any "consideration" or "mere mention of MMI in adjusting PIP claims" by an insurer results in a violation of WAC 284-30-395(1). That was not the standard set forth in *Durant*, and the holding speaks for itself: an insurer violates the regulation if it "denies, limits, or terminates" benefits "based

ORDER – 22

on a finding" of MMI.  *Durant*, 419 P.3d at 409.

Interpreting *Durant* this way does mean, however, that the scope of individual issues is not as sweeping as GEICO says.  In the instances where GEICO terminated coverage for several reasons, the jury need not, claim-by-claim, sift through those reasons and discern whether MMI was the "sole reason" for, or "primary criterion" of, denial as GEICO suggests.  Dkt. # 77 at 4, 9.  So long as a finding of MMI was *a* reason GEICO terminated coverage, GEICO violates WAC 284-30-395(1).  Of course, if GEICO denied overage for many reasons, a jury would have to determine whether a finding of MMI was, in fact, one of those reasons.  That surely raises some individual inquiry.  Yet class certification is not defeated if individual questions exists; it is defeated if individual questions predominate.

### (3) Common Issues Predominate

Having characterized the issues, the Court holds that on balance common issues predominate.  As discussed above, the central issue here is whether GEICO had a systematic practice of denying coverage based on a finding of MMI.  The resolution of that issue is core to each of Mr. Nichols's claims.  So far, he has shown that the issue is susceptible to generalized, class-wide proof: a common policy with a common MMI provision, a practice of sending claimants to independent medical examinations, a standardized rejection letter asserting MMI, and more.[3]

To be sure, individual issues exist.  Claimants may have been rejected for more than one reason.  But so long as MMI was one of those reasons, GEICO would have violated WAC 284-30-395(1).  Thus, the individual inquiry is not as great as GEICO says it is.

---

[3] In a surreply, GEICO argues that Mr. Nichols improperly attached new evidence in support of his reply brief.  Dkt. # 135.  GEICO requests that the Court strike the evidence and corresponding portions of the brief.  *Id.*  Because the Court need not consider Mr. Nichols's new evidence to reach its conclusion here, the Court denies the request to strike.

GEICO discounts Mr. Nichols's common evidence by arguing that, unlike State Farm in *Durant*, GEICO did not employ "reason codes" or "other programmatic feature designating MMI as a basis for PIP claim terminations." Dkt. # 77 at 8. True, in *Durant*, State Farm used "reason codes" to codify the reason why coverage was terminated in a given instance. *Durant v. State Farm Mut. Auto. Ins. Co.*, No. 2:15-cv-01710-RAJ, 2017 WL 950588, at *1-*2 (W.D. Wash. Mar. 9, 2017). Here, GEICO did not use reason codes. But in certifying the class in *Durant*, this Court did not determine that reason codes were essential to its holding. Indeed, this Court noted that the reason codes themselves still raised individual inquiry and certified the class anyway. *Durant*, 2017 WL 950588, at *2 (certifying a class even though "Reason Codes 536 and 537 do not expressly state that the denial is based on the patient reaching MMI; one would need to review the individual claim file to ascertain whether the physician found that the patient achieved MMI"). Thus, GEICO's argument about reason codes do not tip the predominance analysis.

Finally, GEICO argues that the issue of damages also raises too many individual questions. Dkt. # 77 at 17-19. Calculating damages may indeed require an individualized review of each claim. As labor intensive as that may be, the parties will be able to calculate the damages based on GEICO's records. Despite the possible individualized nature of damages calculations in this matter, the Court finds that "[c]lasswide resolution of the common issues is superior to the filing of multiple and duplicative lawsuits and will result in the efficient and consistent resolution of overarching questions." *Helde v. Knight Transp., Inc.*, No. 2:12-cv-00904-RSL, 2013 WL 5588311, at *5 (W.D. Wash. Oct. 9, 2013); *see also Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment.").

In sum, the Court finds that common questions predominate over individual ones. The predominance prong is met.

### vi. Superiority

Lastly, the Court considers whether the class is superior to individual suits. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (internal citation and quotation omitted). "A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). This superiority inquiry requires a comparative evaluation of alternative mechanisms of dispute resolution. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). Rule 23(b)(3) provides a non-exhaustive list of factors relevant to the superiority analysis. Fed. R. Civ. P. 23(b)(3).

On this front, GEICO makes two arguments. First, it argues that the individual issues here require hundreds of mini-trials, making a class action unmanageable. The Court already rejected that argument. Second, it argues that putative class members have a significant interest in pursuing individual actions given the large amount they stand to gain under their IFCA and CPA claims. Dkt. # 77 at 11-13. The Court agrees. Of the four factors listed in Rule 23(b)(3), the first, class members' interests in "individually controlling the prosecution or defense of separate actions," indeed weighs against class certification.

But the other three factors are neutral or favor class certification. The parties have not shown that another "litigation concerning the controversy" has already begun. Fed. R. Civ. P. 23(b)(3)(B). This weighs in favor of certification. The other two factors are neutral.

On balance, the Court finds that the superiority prong is met. Though putative class members may indeed recover significant sums through individual actions, that would depend on whether the class members could recover punitive damages and attorney's fees. The Court agrees with Mr. Nichols that this "mere possibility" should not prevent certification where all other factors have been met. Dkt. # 94 at 23. And given the overlapping legal and factual issues explained above and the fact that no other

action has already begun, the Court finds that a class action would be more efficient than alternative mechanisms.

## V.   CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motions for summary judgment (Dkt. # 73) and to deny class certification (Dkt. # 77), **GRANTS** Plaintiff's motion to certify class (Dkt. # 94), and **ADOPTS** the parties' joint statements (Dkt. ## 123, 130).

DATED this 28th day of April, 2021.

The Honorable Richard A. Jones
United States District Judge