THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MERLE NICHOLS, on behalf of himself and
All others similarly situated,

        Plaintiff,

    v.

GEICO GENERAL INSURANCE
COMPANY, a foreign automobile insurance
Company,

        Defendant.

Case No. 2:18-cv-01253-TL

**STIPULATED MOTION FOR
PRELIMINARY APPROVAL**

NOTING DATE: APRIL 16, 2025

Plaintiff Merle Nichols, on behalf of himself and the certified *Nichols* Class, as well as GEICO General Insurance Company ("GEICO General"), respectfully submit this Stipulated Motion for Preliminary Approval of the Class Action Settlement.

## I. INTRODUCTION.

This is a class action brought by individuals insured under GEICO General's Personal-Injury Protection ("PIP") insurance policy. Under WAC §284-30-395(1), insurers are only allowed to deny, limit, or terminate benefits if they determine claimed medical expenses are not reasonable, not necessary, not related to the subject accident, or not incurred within three years of

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

the date of loss. In 2018, the Washington State Supreme Court confirmed that "maximum medical improvement" or "MMI" was not a lawful basis to limit PIP benefits under the regulation. *Durant v. State Farm Mut. Auto. Ins. Co.*, 191 Wash. 2d 1, 18, 419 P.3d 400, 409 (2018).

Plaintiff alleges that the GEICO General violated this regulation by limiting PIP benefits based on the finding that claimants had reached or would soon reach "Maximum Medical Improvement" ("MMI"). GEICO General denies all liability, denies the allegations in the lawsuit, and denies that it improperly limited PIP benefits.

Under the proposed settlement, *Nichols* Class Members insured by GEICO General would receive gross allocations equal to approximately **760%** of their denied medical expenses. Further, the Parties also seek certification of a settlement class of individuals insured with other GEICO entities within Washington during the operative *Nichols* class period, who were similarly affected by GEICO's adjustment practice.

As detailed herein, this is an extremely good outcome for both members of the certified *Nichols* Class, and the expanded *Nichols* Non-GEICO General settlement class ("Non-General Subclass").

## II. STATEMENT OF FACTS.

**A. Procedural Posture.**

This action was filed on July 24, 2018, in King County Superior Court. *See* Dkt. #1-2. GEICO subsequently removed the action to this Court. *See* Dkt. #1, Notice of Removal. From early in this case, it was clear the litigation would be hard-fought. As the docket reflects, the Parties participated in multiple discovery disputes. *See* e.g. Dkt. #25. Further, substantial litigation occurred over GEICO's assertion that putative Class Members' claim file materials

STIPULATED MOTION FOR
PRELIMINARY APPROVAL - 2
Case No. 2:18-cv-01253-TL

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

1    were confidential and protected from disclosure to Plaintiff's Counsel, or filing on the public

2    docket. *See* e.g. Dkts. #32, 52, 75, 79, 90, 99.

3         In June 2019, shortly before the agreed deadline for class certification, GEICO filed a

4    Motion to Deny Class Certification and a separate Motion for Summary Judgment. Dkt. #77 and

5    73, respectively. A month later, Plaintiff filed their class certification materials, ultimately

6    seeking certification of the following class:

7         All insured, as defined within GEICO's Automobile Policy, and all third-party
         beneficiaries of such coverage, under any GEICO insurance policy effective in the

8         state of Washington between July 24, 2012 and the present, for whom GEICO limited
         or terminated benefits, or denied coverage based, even in part, upon its determination

9         that its insured or beneficiary had reached "maximum medical improvement" or that
         such benefits were not "essential in achieving maximum medical improvement for

10        bodily injury.

11   Dkt. #94.

12        On April 28, 2021, Judge Richard Jones certified the proposed *Nichols* Class.  Dkt. #137.

13   GEICO subsequently sought review by the Ninth Circuit, a request which was denied. *See* Dkt.

14   #155.

15        In April 2022, the Parties negotiated a joint discovery plan under which GEICO would

16   produce claim file materials for PIP claimants during the *Nichols* Class Period. Dkt. #172.

17   Following their production, Class Counsel would review these materials for purposes of

18   producing a class list. *Id.*  The production process was completed in May 2024. Declaration of

19   Mark Trivett, ¶5.

20        After reviewing the approximately 139,000 pages produced by GEICO, many heavily-

21   redacted, Class Counsel identified 622 individual claims on which GEICO had relied on MMI as

22   a basis for limiting PIP benefits. *Id.*, ¶7. Class Counsel produced this list to GEICO, which then

23   extracted and produced spreadsheet data on each Class Members' claim. *Id.*, ¶8.

STIPULATED MOTION FOR
PRELIMINARY APPROVAL - 3
Case No. 2:18-cv-01253-TL

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

**B. Settlement Posture.**

**1. General Subclass.**

In August 2023, GEICO changed counsel, which provided the opportunity for the Parties to constructively explore settlement. *Id.*, ¶6. Although both Parties expressed interest in mediating the dispute, that could not be accomplished until the claim-file review was complete, which occurred in July 2024. *Id.*, ¶7. After completion of the class list, the Parties began preparations to exchange the information necessary to constructively mediate the dispute. *Id.*, ¶11.

Specifically, this included data showing denied medical expenses for individuals on the Class List. *Id.* That data showed that each of the 622 *Nichols* Class Members had an average of $545.05 in denied medical expenses, which accrued an average of $580.77 in prejudgment interest. *Id.*, ¶9.

**2. Non-General Subclass.**

At the same time, the Parties also discussed the possibility of crafting a settlement which might include individuals impacted by similar adjustment practices during the Class Period, but who were excluded from the certified *Nichols* Class because they were insured with other GEICO entities. *Id.*, ¶10. To identify this group, later identified as the Non-General Subclass, GEICO produced data identifying PIP claims in which GEICO paid a substantial medical expense to local IME providers (e.g. MCN or Examworks). *Id.*, ¶11. From this data, the Plaintiff identified 1,556 unique PIP claims where GEICO's payments indicate an IME occurred. *Id.*

According to the *Nichols* Class's claim file data, in approximately 55.9% of cases where an IME occurred, GEICO cited MMI as a basis for limiting PIP benefits. *Id.*, ¶12. If this occurrence rate is applied to Non-General insureds, Plaintiff estimated that 870 individuals from among 1,556 PIP claims possessed claims for violation of WAC §284-30-395(1) involving MMI.

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

*Id.* Using the *Nichols* Class as a benchmark and adjusting for an occurrence rate of 55.9%, Plaintiff estimated the average Non-General insured would have $305 in denied medical expenses and $325 in prejudgment interest. *Id.*, ¶13.

The Parties agreed to also explore resolution for a settlement class of non-General Insureds at mediation but agreed that each group would be paid from separately-negotiated recovery pools. *Id.*, ¶16.

### 3. Mediation.

On January 3, 2025, the Parties conducted an in-person all-day mediation with Judge Chad Allred, ret. *Id.*, ¶16. At mediation, the Parties advocated their respective positions and exchanged a minimum of ten (10) settlement offers. *Id.*, ¶17. Each offer was composed of two separate figures, the proposed gross recoveries for the *Nichols* Class and Non-General subclass. *Id.* All negotiations were conducted at arm's length, and although candid and polite, remained adversarial. *Id.* Eventually, the Parties reached a settlement in principal and executed a CR 2A Term Sheet. *Id.*

On February 13, 2025, the Parties executed a Conditional Settlement Agreement detailing a proposed settlement for both the *Nichols* Class and Non-General Subclass. *See* Trivett Dec., Ex. 1 (the "Settlement Agreement").

## C. Terms of the Proposed Settlement.

For purposes of preliminary approval, the following summarizes the Settlement Agreement's terms:

### 1. The Settlement Classes.

The Parties seek preliminary approval of the following settlement class:

All insureds, as defined within GEICO's Automobile Policy, and all third-party beneficiaries of such coverage, under any GEICO insurance policy effective in the

STIPULATED MOTION FOR
PRELIMINARY APPROVAL - 5
Case No. 2:18-cv-01253-TL

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

state of Washington between July 24, 2012 and the present, for whom GEICO limited or terminated benefits, or denied coverage based, even in part, upon its determination that its insured or beneficiary had reached "maximum medical improvement" or that such benefits were not "essential in achieving maximum medical improvement for bodily injury."

The Class is composed of two subclasses: (1) six-hundred and twenty-two (622) individuals insured by GEICO General Insurance Company ("General Subclass"), and (2) one-thousand five hundred and fifty-six (1,556) individuals insured by affiliated GEICO entities ("Non-General Subclass").

Trivett Dec., Ex. A, Settlement Agreement, §1.1.

**a. General Subclass.**

The General Subclass is identical to the previously certified *Nichols* Class. Dkt. #137. Based on Defendant's records, this subclass is comprised of six-hundred and sixty-two (662) individual members. *Id.*

**b. Non-General Subclass.**

Under the terms of the Settlement Agreement, the Non-General Subclass is composed of individuals insured by other GEICO entities (e.g. GEICO Choice Ins. Co., GEICO Casualty Ins. Co., GEICO Indemnity Ins. Co., and GEICO Advantage Ins. Co.) in Washington State since 2012, and who submitted a PIP claim and are believed to have undergone an IME. *Id.* Based on GEICO's records, this subclass is comprised of approximately one thousand five hundred and fifty-six (1,556) individual members.

**2.    Financial Consideration and Release.**

**a. General Subclass.**

Under the Settlement Agreement, GEICO will pay a total value of **$2,600,000**, which will constitute the General Subclass common fund. Settlement Agreement, §2.1. This represents **767%** of medical expense damages allegedly denied in association with an IME on each of the 622 General

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

Subclass Members' claims. Trivett Dec., ¶13. This relief will be distributed pro rata to each General

Subclass Member based on the value of their denied medical expenses and accrued prejudgment

interest. Settlement Agreement, §3.2(a). Each General Subclass Member will be assigned a

percentage allocation, with the minimum allocation equivalent to $2,500 in denied medical

expenses and prejudgment interest. *Id.* Members are expected to receive average gross allocations

of at least $4,180.06.

### b. Non-General Subclass.

Under the Settlement Agreement, GEICO will pay a total value of **$930,000**, which will

constitute the Non-General Subclass common fund. Settlement Agreement, §2.1. This represents

approximately **196%** of estimated medical expense damages allegedly denied in association with

an IME on the 1,556 Non-General Members' claims. Trivett Dec., ¶13. This relief will be

distributed to all Non-General Members in equal portions, with estimated gross allocations of at

least **$597.68**. Agreement, §3.2(b).

### c. Scope of Release.

In consideration for GEICO's payments, as set forth below, members of both Subclasses

shall release GEICO, its employees and affiliated entities from:

> any and all claims arising out of or in any manner relating to GEICO's adjustment of
> their PIP claim, including but not limited to claims for declaratory relief, equitable
> relief, breach of contract, common law or statutory bad faith, punitive damages,
> violation of the implied duty of good faith and fair dealing, and violations of the
> Washington State Consumer Protection Act (RCW 19.86) or Insurance Fair Conduct
> Act (RCW 48.30 and WAC §284-30), including any claim to attorneys' fees, costs
> or expenses arising from these claims, which were affirmatively asserted or could
> have been asserted in the Lawsuit ("Released Claims").

Settlement Agreement, §3.4.

STIPULATED MOTION FOR
PRELIMINARY APPROVAL - 7
Case No. 2:18-cv-01253-TL

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

### 3. Notice Program and Distribution.

The parties propose JND Legal Administration to serve as settlement administrator ("Administrator"). *Id.*, §3.1. The Parties also propose a notice program in which the Administrator will issue: (1) send individual notice of the settlement by first-class mail and e-mail (where available) to members of the Settlement Class; and (2) process and track opt-out requests. *Id.*, ¶3.5. Under the Agreement, members of the General and Non-General Subclasses will receive different notices addressing the different recoveries, allocation methods, and settlement considerations. *Id.* The proposed Notices of Class Action Settlement are attached as Exhibits Two and Three to the Declaration of Mark Trivett.

Upon final approval by the Court, the Settlement Administrator will prepare and distribute settlement checks to each Class Member, which will represent their respective allocation after deductions for Court-approved attorney's fees and costs, and incentive awards. *Id.*, ¶3.8. Under the proposed Agreement, General Members are expected to receive net allocations of approximately **$2,668** and Non-General Members will receive net allocations of **$381.55**. This is significant compensation for all Class Members.

### 4. Incentive Award.

The Class Representative will ask the Court to approve a service award of twenty thousand ($20,000) dollars, to be paid from the common funds. *Id.*, §2.1. This award will compensate Mr. Nichols for his time and effort serving as the named plaintiff in this seven-year ordeal, and the risks he undertook in prosecuting the case. The enforceability of the Settlement is not contingent on the Court's award of the service award in this amount. *Id.*

STIPULATED MOTION FOR
PRELIMINARY APPROVAL - 8
Case No. 2:18-cv-01253-TL

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

**5. Attorney's Fees and Costs.**

Class Counsel will ask for an award of attorney's fees amounting to no more than $1,176,549, representing 33.33% of the gross settlement fund, and reimbursement for out-of-pocket litigation costs, which are estimated to be less than $15,000. *Id.* Class Counsel will provide an accounting prior to final approval. The enforceability of the Settlement is not contingent on the Court's approval of an award of attorney's fees and costs in the amounts sought by Class Counsel. *Id.*

**6. Administrative Costs and No-Reversion to GEICO.**

JND estimates its administration costs for settlement notice and distribution of the settlement proceeds will be $53,000. Further, at the end of the distribution period, no settlement funds will revert to GEICO. Settlement Agreement, §3.9. Rather, any unclaimed proceeds will be transferred to the Washington State Unclaimed Property Fund where they can be claimed by Class Members for up to ten (10) years. *Id.*

**D. Settlement Considerations.**

**1. General Subclass.**

As previously stated, the gross recovery for General Members represents approximately 767% of medical expenses, arguably the most concrete and recoverable category of available damages. This negotiated value considers multiple contingencies and risks: (1) the possibility that Class Members would not be awarded treble damages under the CPA, (2) the possibility that Class Members would only be awarded medical expenses up to their respective policy limits at trial, and (3) the possibility that the Court would conclude that Class Members' injuries were uncommon or unmanageable, resulting in potential decertification. Throughout this entire dispute, GEICO has asserted that Class Members are entitled to receive nothing for their claims.

STIPULATED MOTION FOR
PRELIMINARY APPROVAL - 9
Case No. 2:18-cv-01253-TL

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

Class Counsel also considered the outcome of similar litigations on this topic, including the settlement approved in the preeminent case, *Durant v. State Farm*. From briefing filed in *Durant*, it appears the gross settlement provided "100% of actual denied claims suffered by the Settlement Class members, and also includes some interest." *See Durant*, Case No. 2:15-cv-01710-RAJ, Dkt. #105, pg. 21 (Oct. 11, 2018). In a similar class action against Progressive Direct Insurance Company, Class Counsel received final approval of a settlement which provided recovery equal to 150% of both actual denied claims and prejudgment interest. *Stedman v. Progressive Ins. Co*., No. 2:18-cv-1254, 2024 U.S. Dist. LEXIS 16058 (W.D. Wash. Jan. 23, 2024).

In contrast to the "**100% of actual denied claims**" and "**some interest**" recovered in *Durant*, and the **150%** of denied claims and prejudgment interest recovered in *Stedman*, the proposed *Nichols* settlement provides General Members with gross recovery equal to **367%** of denied expenses and accrued prejudgment interest. In Class Counsel's opinion, this is a **spectacular result** for General Members.

To ascertain Class Members' membership and damages, Class Counsel analyzed communications between GEICO and approximately eight hundred and eighty-three (883) insureds, from which the 622 General Members were identified. Trivett Dec., ¶7. Those communications, most frequently a single page, were located within approximately 139,000 pages of documents produced by GEICO. *Id.* Progressive also produced data showing the denied medical expenses associated with IMEs on each of the 622 General Members' claims. *Id., ¶*8-9. In each case, it was possible to identify the precise value of medical expenses denied by GEICO based on an IME, and where GEICO cited the achievement of MMI in post-IME

STIPULATED MOTION FOR
PRELIMINARY APPROVAL - 10
Case No. 2:18-cv-01253-TL

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

1  communications. *Id.* Thus, it was possible to identify the value of medical expenses denied or

2  limited by GEICO in conjunction with an IME for each individual General Subclass member. *Id.*

3  **2. Non-General Subclass.**

4  In respect to the Non-General Subclass, there are three primary considerations: (1) GEICO

5  implemented common adjustment practices across all its entities, including inclusion of MMI

6  within its policies in Washington State since 2012, (2) no other putative or certified class action

7  has been pursued against other GEICO entities arising from alleged violations of WAC §284-30-

8  395, and (3) given that *Durant* was issued in June 2018, almost any claim against GEICO's Non-

9  General entities arising from pre-*Durant* PIP claims have arguably expired. As such, any recovery

10  is arguably a windfall for Non-General Members. *See* Declaration of GEICO Designee Ashley

11  Welk, ¶5-7; Trivett Dec., ¶15.

12  In order to ascertain their damages, Class Counsel relied on GEICO's representation that it

13  implemented common adjustment practices among GEICO General and Non-General entities. *See*

14  Welk Dec., ¶7. This representation allowed Class Counsel's analysis of the *Nichols* Class's

15  composition and damages to serve as a representative sample. Trivett Dec., ¶13. Using this

16  sample, Class Counsel calculated Non-General Members' estimated denied medical expenses and

17  prejudgment interest. *Id.*

18  Further, in negotiating relief on behalf of the Non-General Members, Class Counsel

19  always ensured that any relief was separately negotiated as to avoid potential conflicts between

20  the Non-General and General Subclasses. *Id.*, ¶16. In the end, despite potentially stale claims, the

21  proposed settlement provides these individuals with gross relief equal to **111%** of denied medical

22  expenses and prejudgment interest, an arguably better result than achieved in *Durant*.

23

STIPULATED MOTION FOR
PRELIMINARY APPROVAL - 11
Case No. 2:18-cv-01253-TL

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

1    This settlement is the result of over seven (7) years of contention litigation and analysis,

2 and is a strong outcome for both Subclasses.

3                              **III. AUTHORITY AND ARGUMENT**

4 **A. The Settlement Approval Process.**

5    As a matter of "express public policy," federal courts strongly favor and encourage

6 settlements, particularly in class actions and other complex matters, where the inherent costs,

7 delays, and risks of continued litigation might otherwise overwhelm any potential benefit the

8 class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

9 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class

10 action litigation is concerned"); *see also* William B. Rubenstein, *Newberg on Class Actions*

11 ("Newberg") § 13.1 (5th ed. Updated 2015) (citing cases).  Here, the proposed Settlement is the

12 best vehicle for the Class Members to receive the relief to which they may be entitled in a prompt

13 and efficient manner.

14    The Manual for Complex Litigation describes a three-step procedure for approval of

15 class action settlements: (1) preliminary approval of the proposed settlement; (2) dissemination of

16 notice of the settlement to all affected settlement class members; and (3) a "fairness hearing" or

17 "final approval hearing," at which settlement class members may be heard regarding the

18 settlement, and at which evidence and argument concerning the fairness, adequacy, and

19 reasonableness of the settlement may be presented.  *Manual for Complex Litigation (Fourth)*

20 ("MCL 4th") §§ 21.632 – 21.634, at 432–34 (2014).  This procedure safeguards settlement class

21 members' due process rights and enables the court to fulfill its role as the guardian of class

22 interests.  *See* Newberg § 13.1.

23

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

1        With this motion, the Parties request that the Court take the first step in the settlement

2   approval process by granting preliminary approval of the proposed Settlement Agreement.  The

3   purpose of the preliminary evaluation is to determine whether the settlement "is within the range of

4   possible approval" and thus whether notice to the settlement class of the settlement's terms and the

5   scheduling of a formal fairness hearing is worthwhile.  Newberg § 13.13. *See City of Seattle*, 955

6   F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions

7   of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only

8   upon strong showing of abuse of discretion) (quoting *Officers for Justice v. Civil Serv. Comm'n*,

9   688 F.2d 615, 626 (9th Cir. 1982)). The Court's grant of preliminary approval will allow the

10  Settlement Class to receive direct notice of the Settlement Agreement's terms, and the date and

11  time of the Final Approval Hearing, at which Settlement Class Members may be heard regarding

12  the Settlement Agreement, and at which time further evidence and argument concerning the

13  settlement's fairness, adequacy, and reasonableness may be presented.  *See MCL 4th § 21.634.*

14  **B. The Criteria for Settlement Approval Are Satisfied.**

15      The Ninth Circuit puts "a good deal of stock in the product of an arms-length, non-

16  collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.

17  2009).  To assess a settlement proposal, courts must balance the strength of the Plaintiffs' case;

18  the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining

19  class action status throughout the trial; the amount offered in settlement; the extent of discovery

20  completed and the state of the proceedings; the experience and views of counsel; and the reaction

21  of the class members to the proposed settlement. *In re Online DVD-Rental Antitrust Litig.* ("*In re

22  Online DVD*"), 779 F.3d 934, 944 (9th Cir. 2015); *McKinney-Drobnis v. Oreshack*, 16 F.4th 594,

23  607 (9th Cir. 2021) (listing factors from the 2018 amendments to FRCP 23 as "(A) the class

STIPULATED MOTION FOR
PRELIMINARY APPROVAL - 13
Case No. 2:18-cv-01253-TL

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

1    representatives and class counsel have adequately represented the class; (B) the proposal was

2    negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i)

3    the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of

4    distributing relief to the class, including the method of processing class-member claims; (iii) the

5    terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

6    agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class

7    members equitably relative to each other.").

8       **1.    The Settlement is the Product of Serious, Informed, and Non-Collusive Negotiations.**

9            The Court's role is to ensure that "the agreement is not the product of fraud or overreaching

10   by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

11   reasonable and adequate to all concerned."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th

12   Cir. 1998) (internal quotes and citations omitted); *see also In re Online DVD*, 779 F.3d at 944

13   (noting settlements in class actions "present unique due process concerns for absent class

14   members," including the risk that class counsel "may collude with the defendants") (quoting *In re*

15   *Bluetooth Headset Prods. Liab. Litig.* ("*In re Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2010)).

16           The Settlement is the result of extensive, arm's-length negotiations between experienced

17   attorneys for both parties who are competent practitioners in class action litigation in general and

18   with the legal and factual issues of this case. *See* Trivett Dec., ¶20-26; *see also* Dkts. #95, 96, &

19   97, describing counsel qualifications. Further, as evidenced from the docket, the Parties'

20   respective legal and factual positions have been repeatedly litigated, and voluminous discovery

21   and detailed analysis had occurred prior to settlement. *See* Trivett Dec., ¶5-14

22

23

STIPULATED MOTION FOR
PRELIMINARY APPROVAL - 14
Case No. 2:18-cv-01253-TL

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

**2. The Settlement is Fair and Reasonable in Light of the Alleged Claims and Potential Defenses.**

The Second Amended Complaint asserts claims for declaratory relief, violation of the Insurance Fair Conduct Act, violation of the Consumer Protection Act, common law bad faith, and breach of the implied covenant of good faith and fair dealing. Dkt. #16. It also seeks prejudgment interest, exemplary damages, and attorney's fees and costs. *Id.*

Although this case was conditionally settled before the penultimate issues of liability and damages were resolved, GEICO demonstrated its intent to fiercely contest this litigation. *e.g* Dkts. #43, 73, 77 (GEICO evidentiary and dispositive briefing). GEICO also sought interlocutory appellate review of the Court's certification of the *Nichols* Class. Dkt. #144. Further, it can be argued that the denied medical expenses unique to each claim and the specific language of GEICO's post-IME communications undermine the Class's commonality and manageability. Further, because GEICO's records only show when expenses were denied based on an IME and does not differentiate between expenses denied based on MMI and those denied based on a lawful basis under WAC §284-30-395. For this reason, GEICO could have argued that damages for denied medical expenses were not liquidated, and that Class Members were not entitled to prejudgment interest. Finally, GEICO has consistently argued that the Washington Supreme Court's *Durant* decision, issued **after** most Class Members' PIP claims were resolved, precluded an award of treble or exemplary damages. All of these arguments, as well as GEICO's litigation posture, posed potential risks.

Nonetheless, the Agreement's consideration for General Members' effectively represents **all medical expenses and prejudgment interest, as well as concurrent treble damages under the Consumer Protection Act and Insurance Fair Conduct Act.** Similarly, Non-General Members will be entitled to receive approximately 111% of their estimated denied expenses and

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

prejudgment interest, although some of the underlying PIP claims are over fourteen (14) years old. By any objective measure, this is a very good outcome.

### 3. The Settlement Provides Substantial Relief and Treats All Settlement Class Members Fairly.

As previously described, the Settlement provides that Class Members will receive direct distribution of net settlement proceeds via U.S. Mail and will have up to one-year to claim their check or obtain a replacement check. Settlement Agreement, §3.7 to 3.9. As to the General Class, the proposed allocation plan is based on two individual variables: (1) the value of medical expenses submitted to Progressive but denied based on an IME, and (2) the date on which denied medical expenses were received. *Id.*, ¶3.2(a). For those Class Members with less than $2,500 in denied medical expenses or remaining policy benefits, they will receive gross allocation share equal to $2,500. *Id.* As to the Non-General Class, the proposed allocation is based on one variable: the total number of individuals within the Non-General Class, which is presently 1,556. Further, all members of the Settlement Class will jointly share attorney's fees and costs, incentive awards, and administrative expenses, based on their individual recoveries.

The Settlement also provides that any undistributed funds will be transferred to the Washington State Unclaimed Property Fund, where they can be claimed for years to come. Settlement Agreement, §3.9.

Finally, the Settlement provides that Class Counsel and the Representatives will be paid at the same time as Class Members, ensuring an equitable timeline for distribution. *Id.*, ¶3.7.

Both the monetary and non-monetary terms of the proposed Settlement are highly favorable and fair to Class Members, and ensure that both notice and proceeds are distributed effectively.

STIPULATED MOTION FOR
PRELIMINARY APPROVAL - 16
Case No. 2:18-cv-01253-TL

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

1    **4.    The Requested Attorney's Fees Are Reasonable.**

2          Class Counsel will seek an award of up to $1,176,549, which is equal to 33.33% of the

3    Conditional Settlement Payment. *Id.*, ¶2.1.

4          The Ninth Circuit has approved two methods for calculating attorneys' fees depending on

5    the circumstances: the lodestar method and the percentage-of-recovery method.  Under the

6    lodestar method, the prevailing attorneys are awarded an amount calculated by multiplying the

7    hours they reasonably expended on the litigation by their reasonable hourly rates.  *Staton v.*

8    *Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003).  "Under the percentage-of-recovery method, the

9    attorneys' fees equal some percentage of the common settlement fund…"  *In re Online DVD*, 779

10   F.3d at 949.  Regardless of the method, "courts have an independent obligation to ensure that the

11   award, like the settlement itself, is reasonable."  *In re Bluetooth*, 654 F.3d at 941.

12         The benchmark award is 25% of the common fund or gross recovery. *Hanlon v. Chrysler*

13   *Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Here, Class Counsel requests 33.33%. Trivett Dec.,

14   Ex. One, ¶2.1. Class Counsel believes this percentage is justified based on their view that the

15   settlement is an excellent outcome and provides substantial benefit to Class Members, as well as

16   the years of labor which culminated in the proposed Settlement. *See* Trivett Dec., ¶2-19.

17         While Class Counsel were confident in their ability to succeed at trial, success was by no

18   means guaranteed, especially considering the complexity of the issues involved.  Because

19   Plaintiffs' Counsel agreed to prosecute this case on a contingency basis with no guarantee of ever

20   being paid, they have faced a substantial financial risk over the last seven years.

21         Prior to final approval, Plaintiffs' Counsel will file a separate motion for an award of

22   attorney's fees and costs, addressing in greater detail the facts and law supporting their fee request

23   in light of all of the relevant facts.

STIPULATED MOTION FOR
PRELIMINARY APPROVAL - 17
Case No. 2:18-cv-01253-TL

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

**5.   The Requested Service Award is Reasonable.**

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD*, 779 F.3d at 943 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)). Incentive or service awards are generally approved so long as the awards are reasonable and do not undermine the adequacy of the class representatives. *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013) (finding service award must not "corrupt the settlement by undermining the adequacy of the class representatives and class counsel"). For example, if a settlement explicitly conditions a service award on the class representative's support for the settlement, the service award is improper. *See id.* By contrast, where a settlement "provide[s] no guarantee that the class representatives would receive incentive payments, leaving that decision to later discretion of the district court," a service award may be appropriate." *In re Online DVD*, 779 F.3d at 943.

Here, Class Counsel proposes a service award of $20,000 for Mr. Nichols, or an amount the Court deems appropriate. Mr. Nichols' took on personal and financial risks when he commenced this lawsuit, and without his courage and determination, Class Members would have received nothing. Further, Mr. Nichols participated in discovery and was deposed, and as addressed at class certification, Mr. Nichols still carries the physical and emotional scars of the loss incident which resulted in his PIP claim. Finally, Mr. Nichols's support of the Settlement is independent of any service award and not conditioned on the Court awarding any particular amount or any award at all, in stark contrast to *Radcliffe*. Thus, his adequacy as a class representative is unaffected by an appropriate service award that recognizes his efforts and contributions to the case.

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* MCL 4th § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the Manual for Complex Litigation, a settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representative;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedures for making inquiries.

The proposed forms of notice, attached as Exhibit Two and Three to Mr. Trivett's declaration, satisfy all of the above criteria. The proposed Notices are clear, straightforward, and provide persons in the Settlement Class with enough information to evaluate whether to participate in the settlement. Thus, the Notice satisfies the requirements of Rule 23. *Phillips Petroleum Co. v.*

STIPULATED MOTION FOR
PRELIMINARY APPROVAL - 19
Case No. 2:18-cv-01253-TL

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

1    *Shutts*, 472 U.S. 797, 808 (1985) (explaining a settlement notice must provide settlement class

2    members with an opportunity to present their objections to the settlement).

3          The Administrator will send the Notices (Trivett Dec., Ex. Two and Three) by U.S. Mail

4    and by e-mail to all Class Members. Trivett Dec., Ex. One, ¶3.5. These notices provide

5    information to Class Members about relevant deadlines and prospective allocations, as well as

6    instructions for attending the final approval hearing, objecting, or opting out. Trivett Dec., Ex.

7    Two and Three. All in all, the Notice Program constitutes the best notice practicable under the

8    circumstances, provides due and sufficient notice to the Settlement Class, and fully satisfies the

9    requirements of due process and Rule 23.

10   **C. Scheduling a Final Approval Hearing Is Appropriate.**

11         The last step in the settlement approval process is a final approval hearing at which the

12   Court may hear all evidence and argument necessary to make its settlement evaluation.

13   Proponents of the settlement may explain the terms and conditions of the Settlement Agreement

14   and offer argument in support of final approval.  The Court will determine after the final approval

15   hearing whether the settlement should be approved, and whether to enter a final order and

16   judgment under Rule 23(e).  Plaintiff requests that the Court set a date for a hearing on final

17   approval at the Court's convenience, approximately 120-150 days after entry of an order

18   preliminarily approving the settlement.  If the Court preliminarily approves the settlement in April

19   2025, the final approval hearing should be scheduled in August 2025.  The Parties also request

20   that the Court schedule further settlement deadlines pursuant to the schedule set forth below:

21   //

22   //

23   //

STIPULATED MOTION FOR
PRELIMINARY APPROVAL - 20
Case No. 2:18-cv-01253-TL

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

| ACTION | DATE |
|---|---|
| Preliminary Approval Order Entered | At the Court's Discretion |
| Notice Mailing Date | Within 30 days following entry of the Preliminary Approval Order |
| Exclusion/Objection Deadline | 45 days after Notice Mailing Date |
| Claims Administrator's Filing of Exclusion Requests | 15 days after Exclusion/Objection Deadline |
| Plaintiff's Counsel's Fee Motion Submitted | 30 days after Exclusion/Objection Deadline |
| Final Approval Brief and Response to Objections | 30 days after Exclusion/Objection Deadline |
| Final Approval Hearing / Noting Date | Between 120-150 days of entry of the Preliminary Approval Order |
| Final Approval Order Entered | At the Court's Discretion |

## IV. CONCLUSION.

For the foregoing reasons, the Parties respectfully request that the Court: (1) grant preliminary approval of the settlement; (2) approve the proposed notice plan; (3) appoint JND to serve as administrator; and (4) schedule the final fairness hearing and related dates.

STIPULATED MOTION FOR
PRELIMINARY APPROVAL - 21
Case No. 2:18-cv-01253-TL

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

1    DATED this April 16, 2025.

2    _s/ Mark A. Trivett_                          _s/ Rodney Umberger_
     BADGLEY MULLINS TURNER PLLC                   WILLIAMS, KASTNER & GIBBS PLLC
3    Duncan Calvert Turner                         Rodney Umberger, WSBA # 24948
     Mark A. Trivett                               Stacy DeMass, WSBA # 45592
4    19929 Ballinger Way NE STE 200                601 Union Street, Suite 4100
     Seattle, WA 98155                             Seattle, WA 98101-2380
5    Phone:  (206) 621-6566                        Telephone:  (206) 628-6600
     mtrivett@badgleymullins.com                   Fax:  (206) 628-6611
6    dturner@ badgleymullins.com                   rumberger@williamskastner.com
                                                   sdemass@williamskastner.com
7

8    _s/ Randall C. Johnson_                       _s/ Kristen L. Wenger_
     LAW OFFICE OF RANDALL C. JOHNSON              RIVKIN RADLER LLP
9    Randall C. Johnson                            John P. Marino (pro hac vice)
     PO Box 15881                                  Kristen L. Wenger (pro hac vice)
10   Seattle, WA 98115                             1301 Riverplace Blvd., 10th Floor
     Phone:  (206) 890-0616                        Jacksonville, Florida 32202
11   Rcjj.law@gmail.com                            Phone:  (904) 792-8925
                                                   Facsimile:  (904) 467-3461
12                                                 john.marino@rivkin.com
                                                   Kristen.wenger@rivkin.com
13

14   **Attorneys for Plaintiff**                   **Attorneys for Defendant**

15   _I certify that this memorandum contains 5534 words, in compliance with the Local Civil Rules._

16

17

18

19

20

21

22

23

STIPULATED MOTION FOR
PRELIMINARY APPROVAL - 22
Case No. 2:18-cv-01253-TL

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Avenue W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686